# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 10-cv-04247-NKL |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DAVY O. CROCKETT, CONNIE J. ) | |
| CLARK, WEDGEWOOD ANTIQUES, ) | |
| INC., CAMDEN COUNTY TAX ) | |
| COLLECTOR, MISSOURI ) | |
| DEPARTMENT OF REVENUE, ) | |
| MISSOURI DIVISION OF ) | |
| EMPLOYMENT SECURITY, J. FAYE ) | |
| KRIDER, CENTRAL BANK OF LAKE OF ) | |
| THE OZARKS, MID-AMERICA ) | |
| FUNDING COMPANY, PHILLIPS, ) | |
| MCELYEA, CARPENTER & WELCH, ) | |
| P.C., LAKE REGIONAL HOSPITAL, ) | |
| PENNEY BARTLES AND STEVE ) | |
| HOWERTON, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is a Motion for Summary Judgment [Doc. # 95] by Plaintiff United States of America against Defendants Connie J. Clark, Davy O. Crockett and MidAmerica Funding. The United States asks the Court to 1) reduce to judgment the

1

United States' tax assessments against Clark and Crockett for the tax periods between 1999 and 2007; 2) foreclose the tax liens on the subject property to satisfy Clark and Crockett's federal tax liabilities; and 3) determine the priority of interests in the real property between the United States and MidAmerica. For the following reasons, the Court grants the United States' motion.

I.     **Background**[1]

The Internal Revenue Service made assessments of federal income tax, interest and penalties against Defendants Connie J. Clark and Davy O. Crockett. These assessments were based on federal income and employment tax returns signed and filed by Clark and Crockett for the tax years between 1999 and 2007 [Doc. # 96 at 3].[2] Overall, the United States seeks $147,421.33 for Clark and Crockett's federal individual joint income tax liabilities; $79,583.22 for Clark's federal individual income tax liabilities and $27,480.60 for Clark's federal employment and unemployment tax liabilities. *Id.* Despite notice and demand for payment of the assessments, Clark and Crockett did not pay the assessed taxes. The IRS filed notices of federal tax liens with the Camden County, Missouri, Recorder of Deeds on August 4, 2000; March 30, 2001; January 16, 2004; May 9, 2008;

---

[1] The United States' statement of material facts is deemed admitted by the Court, as Clark and Crockett do not specifically dispute any of the United States' statements of material fact as required by Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(a).

[2] The assessments are described in detail on page 2 of Plaintiff's Suggestions in Support of its Motion for Summary Judgment [Doc. # 96 at 2].

June 23, 2008; November 7, 2008; June 25, 2010; and October 12, 2010.[3]

On November 18, 2010, the United States filed its complaint in this case. Count I of the complaint requests that the Court reduce to judgment the United States' federal tax assessments against Defendants Clark and Crockett. Count II requests that the Court order the judicial foreclosure of the United States' federal tax liens against the Defendants' interests in real property. Count III is a claim for fraudulent transfer based on Clark and Crockett transferring real property located at 1200 Route KK, Osage Beach, MO, into the name of Wedgewood Antiques. Count III requests that the Court determine that Wedgewood Antiques was the alter ego of Clark and Crockett without any ownership interest in the Osage Beach property; that the Court disregard the purported transfer of that property to Wedgewood Antiques as a fraudulent conveyance; and that the Court declare Clark and Crockett the true owners of the Osage Beach property. [Doc. # 1]. On September 21, 2011, Clark, Crockett, Wedgewood Antiques and the United States entered into a stipulation in which the parties agreed that the United States' tax liens at issue in this case encumber the Osage Beach Property. The stipulation resolved Count III of

---

[3]Notices of federal tax lien regarding unpaid federal income taxes and statutory additions to tax for the 1999 tax year were filed on August 4, 2000 and June 25, 2010. Unpaid Form 491 taxes for the first quarter of 2000 were filed on March 30, 2001 and October 12, 2010. Notices for unpaid federal income taxes and statutory additions to tax for 2000 through 2002 tax years were filed on January 16, 2004. For unpaid Form 941 taxes for the third and fourth quarters of 2000, the first, third and fourth quarters of 2001, the first through third quarters of 2002 and the third quarter of 2003, as well as the Form 940 taxes for 2001, notices were filed on May 9, 2008. For unpaid federal income taxes and statutory additions to tax for the 2003 through 2006 tax years, notices were filed on June 23, 2008. For the 2007 tax year, notices were filed on November 7, 2008.

3

Plaintiff's Complaint. [Stipulation, Doc. # 88].

Clark and Crockett submitted a proposed Offer in Compromise to the IRS on April 11, 2003. The IRS rejected the proposed Offer in Compromise on September 8, 2003; the Offer was pending for 150 days.

Camden County, Missouri Department of Revenue, and Central Bank of Lake of the Ozarks were also named as defendants because of real estate tax liens, state tax liens, and Deeds of Trust, respectively, held by the parties. On February 3, 2011, Camden County entered into a stipulation with the United States that the County's interest in the Osage Beach property is superior to the United States' interest. The United States and MDR have also stipulated as to the priority between the parties of the sale proceeds from the Osage Beach property. [Doc. # 96 at 4]. Central Bank and the United States entered into a stipulation on September 29, 2011, setting forth the parties' respective interests in that property. Due to a default on the promissory note secured by the deed of trust recorded by Central Bank on November 23, 2006, the Osage Beach property was sold at a foreclosure sale on September 30, 2011, at the Camden County Courthouse.

Defendant MidAmerica Funding Company recorded a Deed of Trust with the Camden County Recorder of Deeds on March 9, 2007, as security for a $30,000.00 promissory note Wedgewood executed in favor of MidAmerica. The United States and and MidAmerica have not entered into a stipulation. In addition to resolving Counts I and II described above, the United States requests that the Court determine the priority of interests in the real property between the United States and MidAmerica.

## II. Discussion

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 893 (8th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### 1. Federal Tax Assessments of Clark and Crockett

The United States first argues that its tax assessments against Clark and Crockett, as described above, should be reduced to judgment. Tax assessments made by the IRS are presumed correct and the taxpayer bears the burden of proving, by a preponderance of the evidence, that the assessment is erroneous. *North Dakota State University v. United States*, 255 F.3d 599, 603 (8th Cir. 2001). Certificates of Assessments and Payments

5

issued by the IRS have been held sufficient to demonstrate that assessments were made in accordance with statutory and regulatory requirements. *See United States v. Bisbee*, 245 F.3d 1001, 1007 (8th Cir.2001); *United States v. Neal*, 255 F.R.D. 638, 643 (W.D. Ark.,2008). Thus, for the purposes of summary judgment, the introduction of the Certificates of Assessments and Payments by the United States satisfies its burden of making a prima facie case, and the burden is then shifted to the taxpayer to demonstrate that the United States' assessment is incorrect. If the taxpayer fails to present evidence of an arbitrary or erroneous determination of his or her tax burden, the United States is entitled to summary judgment. *Lane v. United States,* 328 F.2d 602, 603 (5th Cir.1964). To rebut the presumption of accuracy, the evidence introduced by the taxpayer must be credible, defined as "evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted." *Blodgett v. C.I.R.*, 394 F.3d 1030, 1035-36 (8th Cir. 2005) (internal citations omitted).

To establish the validity of its assessments against Clark and Crockett, the United States has supplied certificates of assessments as well as an affidavit from an IRS officer, Stephanie Meents, who reviewed the records of Clark and Crockett in October of 2011. The certificates of assessment for Clark and Crockett's tax liability, made at the time each liability was assessed, list the amounts of liability and various penalties and interest added to the initial liability. However, interest and statutory penalties continued to accrue until November 1, 2011, thus resulting in a final balance greater than the amounts on the initial

6

assessments. Meents states in her affidavit that as of November 1, 2011, Clark and Crockett owed the final balances requested by the United States in its proposed judgment before the Court, including statutory interest accrued until November 1, 2011, but not assessed in the initial certificates of assessment. [Declaration of Stephanie Meents, Doc. # 97 at 1-2].

Clark and Crockett challenge the accuracy of the final amount owed, arguing chiefly that the government did not provide calculations or explanation of how the IRS calculated the interest or penalties which have been accruing since the assessments. However, the statute governing the burden of proof in issues of taxpayer liability, I.R.C. § 7491(c), does not require the government to provide an explanation for how the accrued interest and penalties were calculated, and Clark and Crockett have not produced any statutory or case law supporting such a contention. Thus, Meents' affidavit, which lists the amounts of post-assessment interest and penalties to be added to the liability, represents a sufficient evidentiary showing, which Clark and Crockett have failed to rebut with contrary evidence.

Clark and Crockett further challenge the accuracy of the assessments by arguing that the certificate of assessment for the tax period of 2000 contain inaccurate figures. Specifically, they claim that the stated balance does not account for taxes paid by Defendants in the amount of $910.47. However, as shown in the certificate from that year [Doc. # 97-2,] the amount of $910.47 is clearly listed in the column designated for payments and credits and was subtracted from the total assessed liability for that year. As

7

Clark and Crockett have produced no credible evidence that the assessments are erroneous, the Court finds that the United States is entitled to judgment against Clark and Crockett in the amounts listed in Meents' Affidavit and specified in the conclusion of this Order.

**2. Federal Tax Liens**

The United States seeks the Court's ruling that the United States has valid tax liens against Clark and Crockett, that the federal tax liens attach to the property described in the Complaint [Doc. # 1], and that the federal tax liens can be foreclosed under 26 U.S.C. § 7403.

*A. Validity*

If any person liable for federal taxes does not pay them after assessment, notice and demand, the amount of the unpaid taxes "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. *See United States v. First Nat'l. Bank & Trust Co. of Fargo, N.D.*, 386 F.2d 646, 647 (8th Cir. 1967). After proper notice and demand, Clark and Crockett failed to pay the assessed taxes discussed earlier; thus federal tax liens arose pursuant to 26 U.S.C. (I.R.C.) §§ 6321 and 6322 as of the dates of assessment.

The tax liens are valid if the statute of limitations for collection has not expired. Section 6501 of the I.R.C. requires the United States to assess taxes within three years after the filing of a return. 26 U.S.C. § 6501(a). Where the assessment of any tax has been made within the three year period, Section 6502 requires the United States to

8

commence an action to collect the assessed taxes within ten years of the assessment. 26 U.S.C. § 6502(a)(1). Where an action has been commenced by the United States within ten years of the assessment date, the statute of limitations stops running, and the United States can enforce the judgment at any time. 26 U.S.C. § 6502(a)(1); *United States v. Brickman*, 906 F. Supp. 1164, 1168-69 (N.D. Ill. 1995).

The United States filed its complaint in this action on November 18, 2010. Thus, the income assessments against Clark and Crockett for the years 2000 through 2007 fall within the general 10 year collection statute, as the earliest of these, the 2000 individual income tax returns, were assessed on June 4, 2001, resulting in an expiration date of June 4, 2011. However, the 1999 individual income tax returns were assessed on May 29, 2000, thus resulting in an expiration date of May 29, 2010, months before the filing of the government's complaint in this case. However, pursuant to I.R.C. §§ 7122, Clark and Crockett submitted an Offer in Compromise to the IRS on April 11, 2003; the IRS rejected the Offer in Compromise on September 8, 2003, 150 days after it was submitted. The time during which an Offer in Compromise is pending tolls the collection statute of limitations for that period, as well as 30 days immediately following rejection of the Offer of Compromise. Treas. Reg. § 301.7122-1(i). Adding 180 days to the ten-year statute of limitations results in a revised expiration date of November 26, 2010.[4] As the United States filed its complaint before this date, the liens based upon the 1999 tax returns are

---

[4]The actual date was November 25, 2010, but as this date fell on a legal holiday, the last day for filing was actually November 26.

9

Case 2:10-cv-04247-NKL   Document 113   Filed 01/23/12   Page 9 of 14

not barred by the 10-year statute of limitations.

### B. Whether the Liens attach to the Osage Beach Property

The United States seeks a ruling that the federal tax liens against Clark and Crockett attach to the Osage Beach property discussed in the complaint. After assessment, a federal tax lien attaches to all property and rights to property whether real or personal, belonging to the taxpayer, including after-acquired property. *See* 26 U.S.C. §§ 6321, 6322; *United States v. Cache Valley Bank,* 866 F.2d 1242, 1244 (10th Cir. 1989); *United States v. McDermott*, 507 U.S. 447, 453-54 (1993). When the IRS made assessments against Clark and Crockett, liens were created attaching to all of their property and rights to property. On September 21, 2011, Clark, Crockett, Wedgewood and the United States entered into a stipulation [Doc. # 88] that the federal tax liens against Clark and Crockett encumber the property located at 1200 Route KK, Osage Beach, MO. The stipulation resolved Count III of the complaint, in which the United States alleged that Wedgewood Antiques owned that property as Clark and Crockett's nominee/alter ego. Clark and Crockett concede that the stipulation states that any judgment the government receives in Count I may be a lien on the Osage Beach property described in Count III. [Doc. # 110 at 3-4]. Thus, there is no genuine issue of material fact as to whether the lien attaches to the property. Though Defendants argue in their briefing that the stipulation is not an admission of the facts stated in Count III, whether that is true or not is irrelevant given that the parties have already stipulated that the liens attach to the Osage Beach property.

### C. Foreclosure of Liens

A lien on a taxpayer's property and rights to property arises when the taxpayer is liable for federal taxes but refuses to pay after demand is made. I.R.C. § 6321. Federal tax liens arise at time of assessment and continue until the liabilities are satisfied or become unenforceable. I.R.C. § 6322. When there is a lien created by I.R.C. § 6321, and the taxpayer has refused or neglected to pay the tax or discharge any liability, a district court may, after adjudicating the merits of the government's claim to property upon which it has obtained a federal tax lien, decree a sale of the property and order a distribution of the proceeds from its sale. I.R.C. § 7403. A court has very limited discretion to deny foreclosure of a federal tax lien on a taxpayers' property under I.R.C. § 7403. *United States v. Rodgers*, 461 U.S. 677, 709 (1983) ("We can think of virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself."). Given the stipulation between the United States and Clark, Crockett and Wedgewood, as well as a lack of harm to the interests of the non-liable defendants, the Court finds no reason to exercise its discretion to deny foreclosure of the United States' tax liens. As the Osage Beach property has already been sold in a bank-initiated foreclosure sale, the liens now attach to the proceeds of that sale rather than the property itself. Thus, the Court permits the liens to be foreclosed on the proceeds of the sale of the property to satisfy Clark and Crockett's tax liabilities.

### D. Priority of Liens

11

Although federal tax liens attach to all property of a taxpayer upon assessment, notices of federal tax lien are filed to protect the priority of the Government relative to certain third-party claimants. The priority of the federal tax lien as against competing creditors is not valid until notice has been recorded (perfected) and once perfected, priority is governed by the principle that "the first in time is the first in right." *McDermott*, 507 U.S. at 449.

The United States has entered into stipulations of priority with the Missouri Department of Revenue, Camden County, and Central Bank concerning the parties' respective interests in the property. MidAmerica remains the only non-liable defendant who has not entered into a stipulation of priority with the United States. The government acknowledges that the promissory note and deed of trust record by MidAmerica on March 9, 2007, is a security interest as defined by I.R.C. § 6323(h)(1) and enjoys priority over the government's notices of federal tax lien recorded by the IRS after this date. I.R.C. § 6323(a). The United States now asks the Court to issue a ruling on the priority of MidAmerica's security interest relative to that of the government. Specifically, the United States asks that the Court rule that the only notices of federal tax lien over which MidAmerica would have priority are the notices that the United States filed on May 9, 2008, June 23, 2008, and November 7, 2008. As these three notices are the only ones filed by the United States that were perfected later in time than MidAmerica's March 2007 notice, the Court rules that these are the only notices of federal tax lien over which MidAmerica would have priority.

The Court rejects Clark and Crockett's contention that the priority of the liens is still a material and disputed issue of fact in this case. The priority of the liens is not material to Clark and Crockett's case, which concerns whether the United States' tax liens against Clark and Crockett are valid and whether the United States can foreclose upon the proceeds of the Osage Beach property to satisfy the tax liens. The issue of priority, instead, is an issue relevant only to the various parties with existing liens on the Osage Beach property. In any event, Clark and Crockett failed to contest in their briefing any of the facts presented by the United States concerning the security interest held by MidAmerica in the Property or the date of perfection of that interest.

As the Court orders the foreclosure of the government's tax liens upon the proceeds of the sale of the property, the United States must file a motion for order of distribution of the proceeds from the sale in accordance with the stipulations of priority filed with the Court, consistent with this ruling.

### III.    Conclusion

For the above reasons it is hereby ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 95] is GRANTED. Judgment is entered in the United States' favor against Clark and Crockett in the amount of $147,421.33 for the 1999-2002 tax years, against Clark in the amount of $79,583.22 for the 2003-2007 tax years, and against Clark for unpaid employment and unemployment taxes in the amount of $27,480.60, plus statutory additions accruing after November 1, 2011. The Court also finds that upon the assessment of these taxes, tax liens arose against Clark and Crockett and the liens

attached to the property located at 1200 Route KK, Osage Beach, MO. The Court hereby orders these federal tax liens enforced against the proceeds from the sale of that property. The Court also rules that Defendant MidAmerica's promissory note and deed of trust, recorded on March 9, 2007, has priority only over the federal tax liens of which notice was filed by the United States on May 9, 2008, June 23, 2008 and November 7, 2008.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: January 23, 2012
Jefferson City, Missouri